**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **KEITH JORDAN,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **VS.** | § | **NO. 3:02-CV-0086-P** |
| | § | |
| **DOUGLAS DRETKE, Director** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division** | § | |
| | § | |
| **Respondent.** | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States Magistrate Judge pursuant to 28 U.S.C.

§ 636(b) and a standing order of reference from the district court.  The Findings, Conclusions

and Recommendation of the Magistrate Judge are as follows:

**I.  Procedural Background**

Petitioner challenges his conviction for aggravated kidnaping.  *State v. Jordan*, No. F97-

03223-KP (203rd Dist. Ct., Dallas County, Tex., Nov. 12, 1997).[1]  A jury found him guilty and

assessed punishment at twenty years in prison.  *Id.*  His conviction was affirmed on appeal.

*Jordan v. State*, No. 05-97-02030-CR (Tex. App. – Dallas, April 27, 1999, no pet.).  He did not

file a petition for discretionary review.

---

[1]On the same date as his aggravated kidnaping conviction, Petitioner was also convicted
of aggravated sexual assault.  *State v. Jordan*, No. F96-78296-WP (203rd Dist. Ct., Dallas
County, Tex., Nov. 12, 1997).  On October 24, 2001, the Court of Criminal Appeals vacated the
aggravated sexual assault conviction.

**Findings, Conclusions and Recommendation**
**of the United States Magistrate Judge**        Page -1-

Petitioner filed a state application for writ of habeas corpus.  *Ex parte Jordan*, 49,872-02 (Tex. Crim. App. Oct. 24, 2001).  After a hearing, the trial court found that Petitioner received ineffective assistance of counsel.  The trial court therefore recommended that habeas relief be granted.  *Id*. at 71.  The Court of Criminal Appeals, however, denied the application without written order.  *Id*. at cover.

On January 11, 2002, Petitioner filed this federal petition for writ of habeas corpus.  He argues: (1) he received ineffective assistance of counsel; and (2) the state suppressed evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

On February 5, 2004, the undersigned magistrate judge found that Petitioner's counsel was constitutionally ineffective when she failed to inform Petitioner that the state's plea bargain offer in the aggravated sexual assault case required that Petitioner complete a pre-sentence investigation report by a certain date.  The Court found that due to defense counsel's failure to provide Petitioner with this information, he failed to complete the pre-sentence investigation report.  The state then withdrew its plea bargain offer and additionally charged Petitioner with the aggravated kidnaping case that he challenges in this petition.

On March 5, 2004, the state filed objections to the Findings, Conclusions and Recommendation.  On May 6, 2004, the district court overruled the objections and granted habeas relief.  On May 26, 2004, the state appealed to the Fifth Circuit Court of Appeals.  On July 6, 2005, the Court of Appeals reversed the judgment of the district court and remanded for consideration of Petitioner's remaining claims.  The Court now finds the remaining claims should be denied.

**II.  Factual Background**

The following factual background is taken from the opinion of the Fifth District Court of

Appeals.

> The complainant, S.T., testified that on the day of the offenses, she went home
> from school with a friend.  S.T.'s mother was working the three to eleven shift.  Around
> 9:30 p.m., S.T. walked to the 7-Eleven at the corner of Ferguson and Oaks in Dallas
> County.  S.T. wanted to use the pay telephone to find a ride home because the telephone
> had been turned off at her friend's house.  S.T. had just finished using the telephone when
> appellant approached her and identified himself as a police officer.  Appellant told S.T.
> that she had violated curfew, and that he would drive her home and write her mother a
> ticket.  Appellant ordered S.T. into his green Lexus and asked her where she lived.  S.T.
> got into the car and gave appellant directions to her home.  S.T., becoming alarmed when
> she realized appellant was not driving her home, began to scream and cry.  Appellant said
> he was taking her to the Mesquite Police Department instead.  However, after appellant
> passed the exit for the Mesquite Police Department on the freeway, S.T. began to scream
> and cry again.  This time appellant pulled the car off the freeway, parked under a bridge,
> and forced S.T. into the trunk of his car.  S.T. testified that they drove for a long time.
> Appellant finally let her out on a dirt road in a deserted wooded area containing two
> broken down cars and a burned-out house and shack.  Appellant threatened numerous
> times to kill S.T.  Appellant dragged S.T. to a spot near some trees and forced her to have
> sexual intercourse.  He then grabbed S.T.'s arm, pulled her into the burned-out house,
> forced her to have intercourse again, and performed oral sex on S.T.  Appellant forced
> S.T. to have sex a third time in the front seat of his car before he drove her back to her
> friend's house.  On the return trip, appellant forced S.T. to keep her head down so she
> would not be sure where they had been.  S.T. estimated that she arrived at her friend's
> house around six o'clock in the morning.
>
> . . . .
>
> Appellant testified that S.T. approached his vehicle outside the 7-Eleven after
> midnight and asked for a ride.  Appellant testified that S.T. appeared to be eighteen years
> old.  Appellant testified that S.T. got into his car and said she was trying to make some
> money.  Appellant said that S.T. wanted money for sex and they agreed to go to the
> Forney property.  Appellant testified that the Forney property belonged to his wife.
> Appellant testified he never represented to S.T. that he was a police officer, never
> threatened S.T.'s life, and they engaged in consensual sex.  When appellant paid S.T.
> twenty dollars, she became irate, began cursing, and insisted appellant pay her more
> money.  Appellant testified that he put S.T. in the trunk of his car for a few minutes to
> calm her down.  He let her out of the trunk after she calmed down and drove her to her
> friend's house in Dallas.

*Jordan v. State*, No. 05-97-02030-CR (Tex. App. – Dallas, April 27, 1999, no pet.), Slip Op. at

1-4.

### III. Discussion

### 1.     Standard of Review

The pertinent terms of the Antiterrorism and Effective Death Penalty Act of 1996 (the

AEDPA), 28 U.S.C. § 2254 provide:

> (d)     An application for writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a state court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings unless the adjudication
> of the claim –
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of
> the facts in light of the evidence presented in a State court proceeding.

*See* 28 U.S.C. § 2254(d). Under the "contrary to" clause, a federal habeas court may grant the

writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the

United States Supreme Court on a question of law or if the state court decides a case differently

from the United States Supreme Court on a set of materially indistinguishable facts. *Williams v.*

*Taylor*, 529 U.S. 362, 380-84 (2000). Under the "unreasonable application" clause, a federal

court may grant a writ of habeas corpus if the state court identifies the correct governing legal

principle from the United states Supreme Court's decisions, but unreasonably applies that

principle to the facts of the prisoner's case. *Id.*

This amendment applies to all federal habeas corpus petitions which are adjudicated on

the merits in state court after April 24, 1996. *See Lindh*, 521 U.S. at 336. The petition in this

case is subject to review under the AEDPA.

Additionally, under 28 U.S.C. § 2254(d), a presumption of correctness must be accorded findings of fact made by a state habeas court if supported by the record. *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994) (citation omitted).

**2.     Ineffective Assistance of Counsel**

Petitioner claims he received ineffective assistance of counsel because his counsel: (1) did not explain the law; (2) did not object to expert testimony; (3) did not object to improper bolstering of the complaining witness' credibility; and (4) did not object to the jury charge.

To sustain a claim of ineffective assistance of counsel, Petitioner must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive Petitioner of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

Even if counsel is proven deficient, a petitioner must prove prejudice. To prove such prejudice, Petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id*. "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id*. (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

<u>**(a) Explain the law**</u>

Petitioner argues his counsel was ineffective because she failed to adequately and correctly explain the law to him.  He states his counsel informed him that he had a good defense to the charges because Petitioner did not know the complainant was a minor and because the complainant voluntarily went with Petitioner and voluntarily engaged in sexual intercourse.

On state habeas review, Petitioner's defense counsel testified that she informed Petitioner prior to trial that he had no defense to the charges.  (State Habeas Hearing Tr. at 32, 33, 49, 51). Although the trial court found that Petitioner was more credible on this issue, the Court of Criminal Appeals rejected the trial court's Findings of Fact and Conclusions of Law and denied Petitioner's claim.

Further, defense counsel argued at trial that Petitioner was not guilty of aggravated kidnaping because the complainant voluntarily went with Petitioner.  Petitioner argues that even if the complainant voluntarily accompanied him, it is no defense to the aggravated kidnaping charge because "he could not legally take the complainant to a rural area for the purpose of engaging in sex with her."  (Pet. Mem. at 7).

Under Texas law, aggravated kidnaping is defined as follows:

(a) A person commits an offense if he intentionally or knowingly abducts another person with the intent to:

(1) hold him for ransom or reward;

(2) use him as a shield or hostage;

(3) facilitate the commission of a felony or the flight after the attempt or commission of a felony;

(4) inflict bodily injury on him or violate or abuse him sexually;

(5) terrorize him or a third person; or

(6) interfere with the performance of any governmental or political function.

TEX. PENAL CODE STAT 20.04 (West 1996).

The statute requires that the defendant "abduct" his victim. The definition of "abducts" is found in Texas Penal Code (STAT) Section 20.01 which states:

2.      "Abduct" means to restrain a person with intent to prevent his liberation by:

(A)     secreting or holding him in a place where he is not likely to be found; or

(B)     using or threatening to use deadly force.

TEX. PENAL CODE STAT 20.01 (West 1996).

To "abduct" a person, the defendant must "restrain" that person. Section 20.01 defines "restrain" as follows:

In this chapter:

(1)     "Restrain" means to restrict a person's movement without consent, so as to interfere substantially with his liberty, by moving him from one place to another or by confining him. Restraint is "without consent" if it is accomplished by:

(A)     force, intimidation, or deception; or

(B)     any means, including acquiescence of the victim, if he is a child less than 14 years of age or an incompetent person and the parent, guardian, or person or institution acting in loco parentis has not acquiesced in the movement or confinement.

*Id.*

At the time of the incident, the complainant was fourteen years of age. (Trial Tr., Vol. 2 at 11). Under the statute, if she voluntarily accompanied Petitioner, he is not guilty of restraining or abducting her. He has therefore failed to show that even if his counsel informed

him that consent was a defense to the aggravated kidnaping charge, counsel's performance was constitutionally deficient.  Petitioner's claim should be denied.

(b) Expert Testimony

Petitioner argues his counsel was ineffective for failing to object to testimony by Detective Canibano.  Detective Canibano worked in the Child Exploitation Unit and the Federal Crime Against Children Task Force of the Dallas Police Department.  In response to Petitioner's claim that the complaining witness was a prostitute, the prosecution questioned Detective Canibano regarding the profile of juvenile prostitutes.  (Trial Tr., Vol. 2 at 125-27).  Detective Canibano discussed this profile and then testified that the complaining witness did not fit the profile.  Petitioner argues his counsel should have objected to this testimony and/or should have requested a hearing outside the presence of the jury regarding the basis and reliability of Detective Canibano's opinions.

During the state habeas proceedings, Petitioner's defense counsel stated she did not object to this testimony, but instead cross-examined the complainant regarding whether she solicited Petitioner for sex.  (State Habeas Corpus Hearing, Tr. at 55; AND CITE TO CROSS OF CW).  Petitioner has not shown that his counsel's conduct fell outside of reasonable trial strategy.  *See Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992).

Further, Petitioner has failed to show the required prejudice.  He has not shown there is a reasonable probability that the result of the proceedings would have been different but for counsel's failure to object to this testimony and/or counsel's failure to request a hearing.  His claim should therefore be denied.

(c) Bolstering

Petitioner argues his counsel was ineffective because she did not object when Detective

Canibano testified that he did not believe the complainant was being untruthful when he

interviewed her.  (Vol 2 at 135).  Petitioner argues this testimony was improper bolstering of the

complainant's credibility.

The record reflects the following testimony:

| | |
|---|---|
| Defense Counsel: | Okay.  Officer, with all of your experience in these varied areas that you have told us that you have worked in the past 29 years, when you had an opportunity to talk with [the complaining witness] about what happened that afternoon, was there anything in her statement to you, that you considered circumspect related to a 14 year old female child? |
| Detective Canibano: | No. |
| Defense Counsel: | So, there was nothing in your estimation unusual relating to what happened to [the complaining witness] on the night, in the afternoon of I guess September the 5th which extended into September the 6th? |
| Detective Canibano: | There was a lot that was unusual, but did I suspect that anything that she was telling me was untrue, no.  I find it very unusual that a man would take a child to a wooded area and rape her but did I believe that she was telling me the truth?  Absolutely. |

Vol. 2 at 136-37.

Petitioner argues his counsel should have objected that Detective Canibano's answer

improperly bolstered the complainant's credibility.  Defense counsel, however, specifically

asked the witness what he thought about the complainant's interview statements.  The witness

simply answered the question.

Further, even if the answer constituted impermissible bolstering, counsel's failure to

object does not constitute ineffective assistance.  Defense counsel may have believed "that the

dangers inherent in objecting – losing the objection or appearing obstructionist to the jury –

**Findings, Conclusions and Recommendation**
**of the United States Magistrate Judge**          Page -9-

outweighed the marginal benefit in preventing the bolstering.  Such a calculation was surely the

defense counsel's to make." *Knox v. Johnson*, 224 F.3d 470, 480 (5th Cir. 2000).  Moreover,

Petitioner has failed to show that had his counsel objected to Detective Canibano's testimony,

there is a reasonable probability that the result of the proceedings would have been different.

Petitioner's claims should be denied.

(d) Jury Charge

Petitioner argues his counsel was ineffective for failing to object to the jury charge.  He

objects to the portion of the charge which states that he: "may earn time off the period of

incarceration imposed through the award of good conduct time."  Petitioner states that because

he is not entitled to mandatory supervision, this instruction is in error.

Texas Code of Criminal Procedure art. 37.07, sec. 4 states in pertinent part, however, that

the jury charge for a defendant convicted of aggravated kidnaping "shall" state that:

> Under the law applicable in this case, the defendant, if sentenced to a term of
> imprisonment, may earn time off the period of incarceration imposed through the award
> of good conduct time.
> . . .

Tex. Code Crim. Proc. art. 37.07 sec. 4 (West 1996).

The charge in this case contained the language mandated by the statute.  The Texas Court

of Criminal Appeals has considered this language and has found that although a defendant may

not be eligible for mandatory supervision, the trial court must include this language in the

charge.  *Luquis v. State*, 72 S.W.3d 355, 363 (Tex. Crim. App. 2002).

The charge in this case also contained the following mandatory language from art. 37.07,

sec 4:

> Under the law applicable in this case, if the defendant is sentenced to a term of

imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentenced imposed or 30 years, whichever is less, without consideration of any good conduct time he may earn.  If the defendant is sentenced to a term of less than four years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole and good conduct time.  However, you are not to consider the extent to which good conduct time may be awarded or forfeited by this particular defendant.  You are not to consider the manner in which the parole law may be applied to this particular defendant.

(Clerk's Record at 24-25).

In *Luquis*, the Court of Criminal Appeals examined this language and found that it did

not violate the defendant's due process rights.  The Court stated:

The practical import of the trial court's instruction to the jury is that "if an inmate behaves well, he will likely get out of prison sooner than if he misbehaves.  However, no one can predict when he will actually get out, except that it will not be until he has served at least one-half his sentence or thirty years."  This is message that the Legislature intended to convey in section 4(a), and this is, under any fair reading of the instruction, the message that it did convey.  That is a legally accurate message.

*Luquis*, 72 S.W.3d at 364-65.

Petitioner has failed to show that the jury instruction constituted error.  Petitioner has not

established that his counsel was constitutionally ineffective for failing to object to the jury

charge.

### 3.    *Brady v. Maryland*

Petitioner argues the prosecution violated his due process rights because it failed to

disclose evidence required under *Brady v. Maryland*, 373 U.S. 83 (1963).  Petitioner states the

prosecution failed to disclose juvenile records of the complainant.  These records showed that

the complainant had been arrested for shoplifting.

During the trial, the complainant testified that Petitioner stated he was a curfew officer and that she thought he was taking her to the Mesquite Police Department.  On cross-examination, the complainant was asked:

| | |
|---|---|
| Defense Counsel: | Why would you think that he would be taking you to the Mesquite Police Department? |
| Complainant: | Because it was close, I guess, I never been to one of those little jail things before, I never got a curfew ticket before. |

Vol. 2 at 59.

Petitioner argues that the complainant lied under oath because she had, in fact, been arrested before.  He states that if the prosecution had disclosed the complainant's juvenile records, he could have impeached the complainant's credibility.

To establish a *Brady* claim, Petitioner must show that the prosecution suppressed favorable, material evidence that was not discoverable through due diligence.  *Brady*, 373 U.S. at 87.  Evidence is "material" if there is a "reasonable probability" that the outcome of the trial would have been different had the evidence been disclosed to the defendant.  *United States v. Freeman*, 164 F.3d 243, 248 (5th Cir. 1999).  *Brady,* however, "does not obligate the State to furnish a defendant with evidence that is fully available to the defendant through the exercise of reasonable diligence."  *Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th Cir. 2002) (citing *Rector v. Johnson*, 120 F.3d 551, 558 (5th Cir. 1997); *see also, In re Smith*, 142 F.3d 832, 836 (5th Cir. 1998) (finding that if defendant, using reasonable diligence, could have obtained the information, no claim arises under *Brady*); *United States v. Aubin*, 87 F.3d 141, 148-49 (5th Cir. 1996) (finding that due diligence on the part of the defendant is a necessary element in a

successful *Brady* claim).

In this case, defense counsel testified that she hired an investigator who reviewed the complainant's juvenile records prior to trial.  (State Habeas Corpus Hearing Tr. at 49-50).  These records were therefore not only available to Petitioner, but his defense team actually reviewed them.  Petitioner therefore cannot show that any evidence was suppressed.

Additionally, Petitioner has not shown that the complainant was untruthful.  The complainant testified that she had never been to "one of those little jail things before, I never got a curfew ticket before."  Vol. 2 at 59.  The complainant juvenile records show that she was arrested for shoplifting clothing at J.C. Penney's.  The complainant was taken to the Mesquite Police Department, but there is no evidence that she was ever taken to a jail.  Under Texas law:

> The juvenile court may designate an office or a room, which may be located in a police facility or sheriff's offices, as the juvenile processing office for the temporary detention of a child taken into custody under Section 52.01 of this code.  The office may not be a cell or holding facility used for detentions other than detentions under this section.

Family Code Section 52.025.  Petitioner has not shown that the complainant was ever taken to jail, or that she lied under oath.  The trial court's findings on this issue are not supported by the record and are not entitled to deference.  Petitioner has failed to show he is entitled to relief on his due process claim under *Brady*.

**4.    Summary**

Petitioner is lawfully restrained because he has failed to prove that he has been denied a constitutionally protected interest.  Accordingly, the state courts' determination to deny relief is not contrary to or does not involve an unreasonable application of clearly established federal law and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

**RECOMMENDATION**

 This Court recommends that the petition for writ of habeas corpus pursuant to 28 U.S.C.

§ 2254 be DENIED.

 Signed this 23rd day of February, 2006.


                 _____

                 PAUL D. STICKNEY
                 UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO OBJECT

The United States District Clerk shall serve a copy of these findings and recommendations on the parties.  Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings and recommendations must file and serve written objections within ten (10) days after being served with a copy.  A party filing objections must specifically identify those findings and recommendations to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections.  The failure to file such written objections to these proposed findings and recommendations shall bar that party from a *de novo* determination by the district court.  *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472 (1985).  Additionally, the failure to file written objections to proposed findings and recommendations within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).


PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE